Schlicher v. Vogel.

PETER SCHLICHER

v.

LOUIS VOGEL et al.

[Filed April 2d, 1900.]

Where an insolvent partner credited his wife on the partnership books with an amount she owed the firm for provisions furnished for use in her boarding-house, she was a proper party defendant to a suit brought by another partner against her husband, after dissolution, to compel an accounting of the partnership business and to cancel the credit given her and re-establish her indebtedness to the firm, and her joinder was not subject to an objection of multifariousness.

On bill and demurrer.

This suit is against Louis Vogel, John R. White and Catherine White, his wife. Catherine White has filed a demurrer to the bill.

The main purpose of the bill is to get an accounting from Louis Vogel and John R. White, who were partners with the complainant in the meat business in Princeton, in this county. The bill first sets out a partnership agreement between Peter Schlicher, the complainant, and White & Vogel, to conduct a general butcher business under the firm name of White & Vogel, the contribution of capital to be made by each partner, and the manner in which the business shall be conducted, and how the firm may be dissolved. It sets out that on November 3d, 1898, John R. White bought out the business of said firm, under an agreement of that date signed by Schlicher & White, which agreement recited that Vogel had, on September 2d, 1897, sold his interest in said business to Schlicher, and dissolved said copartnership upon the following basis: White to buy all the stock and fixtures for $500; the accounts due the firm of White & Vogel to be collected and deposited, and out of the same the debts due by said firm to be paid, and the balance to be

divided equally between Schlicher, White and Vogel. The bill
then states that the moneys collected were insufficient to pay
the debts, and that the complainant has advanced $92.80 to.
pay such debts, and that there is not more than $50 of debts
to be collected aside from the personal debts of Vogel, of Mr.
White and of Mrs. White. It sets out that the firm books
show that on May 3d, 1899, Vogel was indebted to the firm
in the sum of $931.19; that the said books show that on
October 27th, 1898, White was indebted to the firm in the sum
of $2,702.15; that the books show that Mrs. White on Sep-
tember 20th, 1898, was indebted to the firm in the sum of
$1,622.15; that on October 27th White caused a credit of
$1,622.15 to be given to his wife on the books of the firm, and
had the same transferred to and charged in his account; that
the books show that erasures were made and said credit forced
on both accounts, and that the object was to balance his wife's
account by assuming her debt himself. The bill sets out that
Vogel and White each personally contracted debts, and had his
creditors trade the same out in meat, and would charge himself
with the amount on the books of the firm; that Mrs. White
not only bought meat of the firm for her boarding-house, but
contracted debts for milk, vegetables, &c., which she bought
from third parties, and her husband would have the said parties
trade out the said bills at the firm's store and would have his
wife's account with the firm credited with the amount of said
bills, and then charge the same against himself. The bill
charges that there is a large indebtedness due said firm from
different parties, as shown by the books of the firm, for meat
bought, and said parties claim that they furnished milk, &c., to
Mrs. White with the understanding with her husband that they
were to trade the same out in meat at the firm's store, and the
pass-books of said firm and of Mrs. White show that they were
given said credit by Mr. and Mrs. White, but no charge made
of the same against Mrs. White or Mr. White in their personal
account with said firm, and no entry made of the same or of any
moneys paid to the said firm; that White & Vogel and some
of the employes of the said firm boarded with Mrs. White, and

Schlicher *v.* Vogel.

that said board bills were credited upon the account of Mrs. White's indebtedness to said firm, and the same were charged on the personal account of White & Vogel to said firm; that Mr. White owns no real estate in Princeton, and his personal property is mortgaged up to its value, and that he is believed to be insolvent, but that his wife owns property; that the firm is insolvent; that the complainant has paid certain debts, and that there are others debts due.

The bill prays for an accounting from each member of the firm, and that all personal debts of Vogel & White paid by meats of said firm and charged to their personal account be disallowed, and that they may be decreed to pay the same; that the accounts for board and other accounts of Mrs. White which were credited on her account may be charged back again to her account, and that it may be ascertained how many bills traded out by the different parties and never charged to her account, and how much she owes the firm; and that Vogel and White, and his wife, may each be decreed to pay over to the firm the amount so found due from them.

As already remarked, to this bill Mrs. White demurs upon the ground of multifariousness.

*Mr. Frank S. Katzenbach, Jr.*, for the demurrant.

*Mr. George O. Vanderbilt* and *Mr. John T. Bird*, for the complainant.

REED, V. C.

This bill, as it appears, is filed by Mr. Schlicher against Mr. White and Mr. Vogel, his former partners, to compel an accounting. Mrs. White, the wife of one of the partners, is made a party to the suit. She is related to the firm transactions in this, that she kept a boarding-house and bought meats and groceries from the firm. She did not pay for them, but her husband gave her a credit for her debt, which amounted to $1,622.15, on the books of the firm, and then charged this sum to his own personal account with the firm. The bill attacks this transaction

23

and asks that the charge against Mrs. White may be restored against her upon the books of the firm. She interposes a demurrer to the bill upon the ground that it is multifarious. The insistence of her counsel is that she has no interest in the accounting required of the members of the firm, and that therefore she should not be put to the trouble and expense of participating in that litigation.

The vice of multifariousness was elaborately considered by Lord Cottenham in the case of *Campbell* v. *MacKay, 1 Myl. & C. 621, 622.* Judge Story gives credit for the observations concerning this matter contained in his book on "Equity Pleadings" to the elaborate judgment of the chancellor in that case. As pointed out in that opinion, and in the text-books, multifariousness may consist of a joinder of claims of a different character in favor of the same plaintiff or plaintiffs against the same defendant or defendants. But what, says Judge Story, is more familiarly understood by multifariousness as applied to a bill is, where a party is brought in as a defendant upon a record, with a large portion of it, and of the case made by which, he has no connection whatsoever. In such case he has a right to demur and to state the evil of those uniting distinct matters in one record to be (and so the old form of demurrer was) that it put the parties to great and useless expense.

As to what constitutes misjoinder or strict multifariousness is a matter not easily defined. Says Judge Story:

"The conclusion to which a close survey of all the authorities would conduct us, seems to be that there is not any positive inflexible rule as to what, in a court of equity, constituted multifariousness which is fatal to the suit on demurrer. These courts have always exercised a sound descretion in determining whether the subject-matters of the suit are properly joined or not, and whether the parties, plaintiff and defendant, are also properly joined or not." *Story Eq. Pl. § 539.*

*Bolles* v. *Bolles, 17 Stew. Eq. 385.* In respect to what matters, apart from the accounting itself, can be brought into a suit for an accounting, there is considerable contrariety of judicial opinion. The weight of authority as well as reason, seems to be, in respect to suits by and against partners, that whenever

the right of a firm to reclaim property, which has been improperly or fraudulently transferred to a third party, has to be settled before an accounting can be completed, then such right can be tried in, and the third party be made a party to, the accounting suit.

In *Penneman* v. *Jones, 58 N. H. 447*, the bill alleged that the plaintiffs and all of the defendants, except one Stark, had been partners; that Jones, who was manager of the firm business, had combined with Stark in certain transactions to defraud the firm. The bill prayed that Stark be compelled to account. Stark moved to dismiss the bill as to himself. The court held that Stark was properly made a defendant, as Jones, with whom Stark was jointly interested in the transaction, was a member of plaintiff's firm, and could not be sued at law and be made plaintiff and defendant in the same suit.

In *Wade* v. *Rusher, 4 Bosw. 537*, a suit was brought by one of two partners against the other to obtain an accounting, and to set aside a release given by plaintiff to defendant. A third person, who had fraudulently obtained from the defendant portions of the partnership property, was also made a party in order to subject the property so held by him to the payment of any balance due from the defendant. It was held that all persons who had come into possession of the property who were not purchasers for value, were proper parties to the suit.

The same doctrine was held in *Webb* v. *Helion, 3 Rob. 625*. In *Palmer* v. *Tyler, 15 Minn. 106*, the bill was by one against two other partners to compel an accounting. Two persons, not partners, were made parties to the bill and charged with fraudulently abstracting, in collusion with one of the partners, from the mill of the firm, certain machinery. The court said: "A partner has a lien upon partnership assets, and if any portion of the property has, by the combined and collusive action of his copartner or other persons, been transferred to other persons through a sham sale for the purpose of putting the same out of his reach and in fraud of the copartnership, he has the right to follow it and subject it to his lien and to the accomplishment of the purpose for which the lien exists. Why should not all this

be embraced in one action ?    The object is single, viz., to bring about a complete and final settlement of the business of the copartnership."

In *Hayes* v. *Heyer, 4 Sandf. Ch. 485,* a bill was filed by one partner against another partner and an assignee, to whom the latter partner had privately assigned the effects of the firm.    The bill asked that the assignment be set aside and that the firm be wound up and· an account taken.    Vice-Chancellor Sandford said: "The bill shows an equal right in both persons to liquidate the affairs of the old partnership, which has been invaded by a collusive transfer of its effects by one partner to a creditor of the firm, and it claims to have the effects vested in a receiver and the account of the partners adjusted.    It brings in Mr. Bement as one who has become mixed up with · a part of the general object of the suit, a part which is essential to obtaining its legitimate end."

The case of *Attorney-General* v. *Cradock, 3 Myl. & C. 85,* was one for an accounting, not against partners, but against trustees of certain charities.    With the defendants was united a person · whom it was charged had, in concert with one of the trustees, fraudulently effected the exchange of a farm in which he and the trustee were jointly interested for a portion of the charity lands. Lord Chancellor Cottenham, in respect to the objection that Cradock, who it was charged had colluded with the trustee, was an improper party, said : "The object of the rule against multifariousness is to protect a defendant against unnecessary expense. But it would be a great perversion of that rule if it were to· impose on the plaintiffs and all the other defendants the expense of two suits instead of one.    The object of the suit is to establish that Cradock has, by means of the transaction stated in the information, become a trustee of part of the charity estate."    What the chancellor meant by his "becoming a trustee," was that he held by his collusive action a part of the property which belonged to the trust estate.

In *Bolles* v. *Bolles, supra,* a bill was filed to compel an executor to account, and also to set aside a deed made by him as executor to his daughter.    The bill was held not to be multifarious.

Schlicher v. Vogel.

And, in addition to the ground that the grantee·in the deed was one of those interested in the accounting, it seems also to have been held that the litigation concerning the validity of the deed was essential to the completion of such account.

Now, in taking an account of the firm matters in the present case, the first question would be whether Mr. White is to be charged with the debt which was transferred to him from the firm books. If this debt was improperly charged off and has to be restored, then Mr. White's liability will be so much the less. Therefore, no complete account can be stated until this question is settled. All the members of the firm are interested in the settlement of this question, for inasmuch as it is. charged in the bill that Mr. White is insolvent, and his wife is pecuniarily responsible, the point involves the query whether this credit is a valuable or worthless asset. The analogy between the posture of affairs of this case and in those cases already cited seems to me to consist in this, that the bill of $1,622.15 was an asset of the firm. If. owing by Mrs. White, it is a valuable asset. By the transference of the asset from a debt due by Mrs. White to a debt due by Mr. White, the firm lost the value of this asset. The transaction was equivalent to a gift of so much of the funds of the firm to Mrs. White. This gift is charged by the bill to have been an illegal transaction, and the bill seeks to set it aside and to hold the debt against the wife as a still subsisting portion of the firm's assets. She stands, therefore, in the posture of one who has received illegally a portion of the firm's property, upon which the partners and the creditors of the firm have a lien. She, therefore, does not stand in the attitude of an ordinary creditor, but in the position of one who has improperly received and still holds partnership assets.

Again, it is to be observed that the wife stands in a peculiar attitude; being the wife of one of the partners, the partnership cannot sue her on her contract at law. *National Bank of Rahway* v. *Brewster, 20 Vr. 231.*

As the question of her liability, therefore, would have to be settled in a court of equity, I am of the opinion that it can be settled in this suit without imposing upon her any undue ex-

pense or trouble. I do not perceive how there can be any increased cost of pleading, under our practice, imposed on her by the fact that she is joined in the accounting suit, and it was the imposition of this additional expense which was the main reason for declaring the joinder of the defendant obnoxious to the criticism of multifariousness.